WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PennyMac Loan Services LLC, | No. CV-24-00561-TUC-AMM |
| Plaintiff, | **ORDER** |
| v. | |
| Randy F Melbye, et al., | |
| Defendants. | |

Pending before the Court is Defendants Randy F. Melbye and Joanne Elizabeth Lavoie's ("Defendants") Motion to Dismiss. (Doc. 12.) This matter is fully briefed. (Docs. 12, 15–16.) For the reasons set forth below, the Court will grant the motion as to Counts 1, 2, 4, and 5, and deny the motion as to Count 3.

**I.      Factual and Procedural Background**

On November 19, 2024, Plaintiff PennyMac Loan Services, LLC ("PennyMac" or "Plaintiff") filed a Complaint against Defendants Randy F. Melbye and his guardian, Joanne Elizabeth Lavoie.[1] (Doc. 1.) This case arises out of a dispute regarding property at 1601 Camino Bacalao, Rio Rico, Arizona, 85648 ("the Property"). (*Id.* at 2.)

According to the Complaint, Lavoie titled the Property to Melbye via quit claim deed on January 14, 2015. (*Id.* at 2.) On October 17, 2017, Melbye obtained a $160,800 loan from Quicken Loans Inc. secured by a deed of trust on the Property. (*Id.*) That same

---

[1] According to the Complaint, Melbye is under a guardianship and conservatorship. (Doc. 1 at 1.)

day, Melbye also obtained a loan for $120,000 from non-party Rocio Dennis. (*Id.* at 3.) This loan was secured by a second deed of trust on the Property. (*Id.*)

On May 24, 2018, Melbye executed a notarized quit claim deed conveying his interest in the Property to Dennis. (*Id.*) Dennis recorded the quit claim deed on May 25, 2018.[2] (*Id.*) Dennis thereafter took title to the Property and paid property taxes. (*Id.*)

On August 23, 2021, Melbye filed a lawsuit against Dennis in Santa Cruz County Superior Court to recover title to the Property.[3] (*Id.* at 4.) Melbye alleged that Dennis offered to temporarily help Melbye cover the monthly payments to Quicken Loans because Melbye was having difficulty paying the debt. (*Id.* at 5.) Melbye further alleged that the quit claim deed that conveyed the Property to Dennis was never meant to be recorded, but Dennis recorded it nonetheless. (*Id.*) Melbye recorded a lis pendens on September 9, 2021 to provide public notice of his pending lawsuit and the dispute over the Property's ownership.[4] (Doc. 12 at 4.) Melbye was in physical possession of the Property at the time. (*See* Doc. 1 at 4.)

While Melbye's case was pending, on September 29, 2021, Dennis filed an unlawful detainer lawsuit against Melbye in Santa Cruz County Superior Court. (*Id.* at 3.) On November 5, 2021, the state court entered final judgment in the unlawful detainer suit in favor of Dennis and found that Dennis was entitled to restitution from Melbye for his "forcible entry and detainer" of the Property. (*Id.*) After the judgment, Dennis took

---

[2] The Complaint erroneously stated that Dennis recorded the quit claim deed "on October 25, 2018, as Document No. 2018-03509." (Doc. 1 at 3.) PennyMac corrects this date in its Response. (Doc. 15 at 3.)

[3] The Complaint does not specify when Melbye filed his lawsuit against Dennis, but it does contain Case No. 202100220. (Doc. 1 at 4.) According to public records from Santa Cruz County Superior Court, *Randy Melbye v. Rocio Dennis*, Case No. 202100220, was filed on August 23, 2021. The Court will take judicial notice of this filing date for purposes of deciding the Motion to Dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (a court may "take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment").

[4] Melbye provided the September 9, 2021 lis pendens as an exhibit to his Motion to Dismiss. (Doc. 12 at 19.) The Court will take judicial notice of the lis pendens as a public record. *See Lee*, 250 F.3d at 689.

physical possession of the Property from Melbye. (*Id.* at 4.)

On February 17, 2022, Dennis obtained and recorded a $150,500 loan from Sunstreet Mortgage, LLC secured by a deed of trust on the Property. (*Id.*) Prior to issuing the loan, Sunstreet Mortgage conducted an appraisal that included photographs showing Dennis was in physical possession of the Property. (*Id.*) The Sunstreet Mortgage loan paid off the Quicken Loans debt in the amount of $146,638.33. (*Id.*) A reconveyance of the Quicken Loans deed of trust was recorded on February 28, 2022. (*Id.*) Because the Sunstreet Mortgage loan paid off Melbye's Quicken Loans debt and released the associated deed of trust, Melbye no longer made payments to Quicken Loans. (*Id.*)

Additional funds from the Sunstreet Mortgage loan paid property taxes and homeowner's insurance on the Property. (*Id.*) According to the Complaint, Melbye did not pay the property taxes and did not have homeowner's insurance on the Property at this time. (*Id.*)

On February 17, 2022, a deed of full release and reconveyance of the deed of trust associated with Melbye's loan from Dennis in 2017 was also recorded. (*Id.*)

On May 25, 2023, Santa Cruz County Superior Court entered default judgment against Dennis Melbye's August 2021 quiet title lawsuit.[5] (*Id.* at 4; Doc. 12 at 25.) The state court held that "the Quit Claim Deed recorded with the Santa Cruz County Recorder on May 25, 2018 at recording number 2018-03509 is void, and was ineffective to transfer the Subject Property to Rocio Dennis. Plaintiff Randy Melbye is the owner in fee simple and is entitled to possession of [the Property] . . . ." (Doc. 12 at 26.)

The state court further ordered:

> [T]hat the Defendant Rocio Dennis, and all who claim title under her in and to the Subject Property are without any right, title, lien, encumbrance, or interest . . . . [and] Defendant Rocio Dennis, and all persons claiming under Defendant Rocio Dennis, are permanently enjoined from asserting any estate, right, title, lien, or interest in or to the

---

[5] Melbye attached the judgment to his Motion to Dismiss. (Doc. 12 at 25–28.) The Court will take judicial notice of this public record. *See Lee*, 250 F.3d at 689.

- 3 -

Subject Property or any part of the property.

(*Id.*)

On January 4, 2024, Sunstreet Mortgage assigned PennyMac the 2022 loan obtained by Dennis and the associated deed of trust. (Doc. 1 at 4.) Thereafter, Melbye communicated to PennyMac that the deed of trust on the Property that secured the Sunstreet Mortgage loan was void in light of the state court judgment. (*Id.*)

On November 19, 2024, PennyMac filed its Complaint asserting state law claims to establish that PennyMac owns a priority security interest in the Property that is superior to Melbye's interest. (*Id.* at 5–7.) PennyMac first brings claims for Equitable Subrogation (Count 1) and Quiet Title (Count 2) to affirm its priority interest. (*Id.*) PennyMac further asserts "alternative claim[s]" for Unjust Enrichment (Count 3), Equitable Mortgage (Count 4), and Ratification (Count 5). (*Id.* at 7–9.)

On December 17, 2024, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 12.)

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal for failure to state a claim because either the complaint lacks a cognizable legal theory or lacks the factual allegations to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).

**III. Discussion**

  **A. Counts 1 and 2: Equitable Subrogation and Quiet Title**

    **i. Parties' Arguments**

Defendants seek to dismiss Counts 1 and 2 because, as a threshold matter, relief under these claims requires that PennyMac owns a security interest in the Property. (Doc. 12 at 1–3, 6.) Defendants argue that Sunstreet Mortgage approved an "ill-advised" loan, which left its assignee PennyMac with a void and unenforceable security interest. (*Id.*) They rely on the doctrine of lis pendens, which establishes that a party who "acquires an interest in property that is involved in pending litigation . . . takes the property subject to whatever valid judgment may be rendered in the litigation." (*Id.* at 6 (quoting *Mammoth Cave Prod. Credit Ass'n v. Gross*, 687 P.2d 397, 399 (Ariz. Ct. App. 1984)).) Specifically, Defendants argue that Melbye's pending lawsuit and recorded lis pendens notified Sunstreet Mortgage that Dennis may not own the Property or the right to encumber it before approving her loan. (*Id.* at 1–3.) Thus, when the state court voided Dennis's interest, and any interest "under" her, Sunstreet Mortgage—and, by assignment, PennyMac—took the Property subject to that judgment. (*Id.*) Moreover, Defendants underscore that the state court issued its judgment before PennyMac bought the loan from Sunstreet Mortgage, thereby providing additional notice to PennyMac that its interest would be void and unenforceable. (*Id.* at 1–2, 6.)

In response, PennyMac argues that the fact that Melbye recorded a lis pendens before the loan does not preclude its present claims.[6] (Doc. 15 at 5–6.) PennyMac asserts

---

[6] PennyMac also argues that res judicata does not bar its lawsuit because the state court did not consider its interests, but Melbye does not assert res judicata. (Doc. 15 at 6–8; Doc. 16 at 2–3.) Rather, Melbye argues that the state court judgment is dispositive because the lis pendens gave Sunstreet Mortgage notice that the interest may be invalid, and Sunstreet Mortgage was later bound by the judgment invalidating that interest. (Doc. 16 at 2–3 ("Melbye is not asking this Court to find that PennyMac's claims are precluded by *res judicata*. Melbye is asking this Court to find that PennyMac's claims are precluded by Arizona Lis Pendens law.").) Because there is no assertion that the state court judgment binds PennyMac because of res judicata, the Court will not address this argument.

1  that it has an enforceable interest in the Property regardless of whether Dennis had valid
2  title because Sunstreet Mortgage paid off Melbye's first-priority loan from Quicken
3  Loans. (*Id.* at 6.) Under the doctrine of equitable subrogation, PennyMac seeks to step
4  into the priority position of Quicken Loans and reaffirm its secured interest in the
5  Property. (*Id.* at 8–11.)

### ii. Relevant Law and Application

There are two competing doctrines at issue in this case: lis pendens and equitable subrogation. The threshold question, therefore, is whether the recorded lis pendens and subsequent state court judgment preclude PennyMac from affirming its secured interest in the Property through equitable subrogation.[7]

A lis pendens is a recorded legal notice to third parties of pending litigation that may affect the title to real property. *Mammoth*, 687 P.2d at 399; A.R.S. § 12-1191. Section 12-1191(A) allows a party to an action affecting title to real property to record a lis pendens, which provides constructive notice to subsequent encumbrancers that the property is subject to the outcome of the pending lawsuit. A.R.S. § 12-1191(A). The purpose is to prevent third parties from acquiring interests and encumbrances without notice of the litigation, thereby ensuring that the court's later judgment can be enforced without interference. *TWE Ret. Fund Tr. v. Ream*, 8 P.3d 1182, 1187 (Ariz. Ct. App. 2000) ("The objective of Arizona's lis pendens doctrine is to prevent the frustration of judgments and decrees by pendente lite transfers of property interests."); *Hatch Cos. Contracting, Inc. v. Ariz. Bank*, 826 P.2d 1179, 1182 (Ariz. Ct. App. 1991) (a lis pendens "also prevents third persons from acquiring interests in the property during the pendency of the litigation that would prevent the court from granting suitable and effective relief").

Under this doctrine, PennyMac cannot plausibly plead that it has a valid deed of trust because Melbye recorded a lis pendens prior to the conveyance, and the Santa Cruz

---

[7] The Court distinguishes between remedies that affirm PennyMac's secured interest in the Property (i.e., equitable subrogation, quiet title, equitable mortgage, and ratification) and equitable remedies under which PennyMac can nonetheless seek to recover its loss (i.e., unjust enrichment).

- 6 -

County Superior Court issued a judgment voiding any interest obtained under Dennis as well as permanently enjoining enforcement of those interests. PennyMac attempts to supersede this doctrine and the state court judgment by asserting that it nonetheless retains a secured interest in the Property through equitable subrogation.

In Arizona, equitable subrogation is a remedy that allows a lender who pays off a senior loan to step ahead of any intervening liens into the senior lender's priority position. *Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204, 1206 (Ariz. 2012) (en banc). This doctrine requires a court to weigh the balance of equities, and whether it applies depends on the particular facts of the case. *See id.* at 1210.

The Arizona Supreme Court has adopted the Restatement (Third) of Property's approach to equitable subrogation. *Id.* at 1207; *Spear v. United States*, No. CIV. 11-1742-PHX-PGR, 2012 WL 2029747, at *1 (D. Ariz. June 6, 2012). Under the Restatement (Third) of Property,

> [o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

Restatement (Third) of Property: Mortgages § 7.6 Subrogation (1997). A common case of equitable subrogation is when a subsequent lender who pays an original lien seeks to advance in priority over first-in-time intervening liens to protect its own interest in the property. *Markham Contracting Co., Inc. v. Fed. Deposit Ins. Co.*, 379 P.3d 257, 263 (Ariz. Ct. App. 2016) (applying equitable subrogation to advance construction lender's lien to the priority position to the extent the amount was used to extinguish the prior lien); *2977 Camino Las Palmeras, LLC v. Deutsche Bank Nat'l Tr. Co., as tr. for New Century Alt. Mortg. Loan Tr. 2006-ALT1*, No. 2 CA-CV 2018-0141, 2019 WL 2591565, at *8 (Ariz. Ct. App. June 24, 2019) (subrogating refinance lender's lien to the priority position over first-in-time recorded intervening liens); *Spear*, 2013 WL 791282 (subrogating

home buyer's lien that paid off priority lien over intervening estate tax lien).

The subsequent lender's notice of an intervening lien is not necessarily determinative because the concern underlying the doctrine is to prevent an intervening lienholder from unjustly enriching itself by advancing in priority. *See Sourcecorp*, 274 P.3d at 1209. "The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid. Ordinarily lenders who provide refinancing desire and expect precisely that, even if they are aware of an intervening lien." Restatement (Third) of Property § 7.6 cmt. e.

The Arizona Supreme Court reaffirmed that "[t]he general rule is that a person *having an interest* in property who pays off an encumbrance *in order to protect his interest* is subrogated to the rights and limitations of the person paid." *Sourcecorp*, 274 P.3d at 1206 (emphasis added) (quoting *Mosher v. Conway*, 46 P.2d 110, 114 (Ariz. 1935)). This policy goal appears to put emphasis on paying an earlier debt to protect an existing interest in the property. *See, e.g.*, *id.* at 1206, 1208–09 ("[T]he Restatement appropriately focuses on other circumstances of the party seeking to invoke subrogation, including whether the party has paid a preexisting obligation to protect the party's interest in the property.").

PennyMac has not sufficiently pled that the doctrine of equitable subrogation applies in these circumstances to supersede the effect of the recorded lis pendens and subsequent state court judgment. It has not presented—and this Court did not find—any authority in Arizona that establishes how these competing legal doctrines reconcile in this context. PennyMac has not pled that equitable subrogation applies where there is no *intervening lien* but rather a notice that the borrower conveying the deed of trust may not legally own title to the property. Furthermore, PennyMac has not sufficiently pled that it had an existing interest to protect or that it protected that interest by paying the Quicken Loans debt. PennyMac's situation is different from one where, for example, a refinance lender pays an original mortgage and seeks to protect its interest to prevent an intervening lienholder from foreclosing on the property and taking all proceeds from the sale.

More importantly, to find PennyMac has sufficiently pled a claim to equitable

- 8 -

subrogation would be to render meaningless the doctrine of lis pendens and the state court's authority to grant effective relief. There would be little purpose to a lis pendens if a lender who was otherwise notified of a lawsuit and bound by its judgment could circumvent that judgment and assert a secured interest simply because it paid off an earlier loan at the request of an invalid borrower.

Neither does the balance of equities favor this outcome. Taking as true both PennyMac's allegations and the judicially noticeable facts, Sunstreet Mortgage issued a loan to Dennis with notice that it would take the deed of trust subject to the outcome of the pending lawsuit. After Santa Cruz County Superior Court invalidated Dennis's deed of trust and permanently enjoined its enforcement, PennyMac bought the loan. Melbye took the proper legal steps to put the world on notice that Dennis may not have a right to encumber the Property. Under these circumstances, equity does not require that PennyMac should now have a secured interest superior to Melbye's interest in the Property. Therefore, the Court will dismiss Count 1 of the Complaint for equitable subrogation and the derivative claim in Count 2 for quiet title.

The Court is, however, cognizant that the underlying policy of equitable subrogation is to prevent unjust enrichment. For the reasons explained below, the Court finds that PennyMac has sufficiently pled its alternative claim against Melbye for unjust enrichment.

### B. Count 3: Unjust Enrichment

#### i. Parties' Arguments

A claim for unjust enrichment requires proof of five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) an absence of justification for the enrichment and impoverishment[,] and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (quoting *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009)). Defendants argue that PennyMac has not sufficiently pled the latter four elements. (Doc. 12 at 9–11.)

First, Defendants argue that PennyMac itself did not suffer an impoverishment

because Sunstreet Mortgage funded the loan. (*Id.* at 9–10.) Furthermore, to the extent PennyMac was impoverished, Defendants assert there is no link to Melbye's enrichment. (*Id.* at 10.) Specifically, if PennyMac was impoverished when it paid money to buy the loan from Sunstreet Mortgage, that impoverishment is linked only to Sunstreet Mortgage's enrichment. (*Id.*)

Next, Defendants contend that Melbye's enrichment was justified. (*Id.* at 10–11.) They argue that Melbye did not contract with Sunstreet Mortgage for the loan and any failure to perform on that contract (i.e., pay) was a failure by Dennis. (*Id.*)

Finally, Defendants assert that PennyMac has another remedy at law because it could sue Dennis for breach of contract. (*Id.* at 11.)

PennyMac argues that it is entitled to any remedy that Sunstreet Mortgage would have as the original lender because it stepped into Sunstreet Mortgage's shoes once it bought the loan. (Doc. 15 at 11–12.) Furthermore, because Sunstreet Mortgage paid and extinguished a loan that Melbye was otherwise liable for, its impoverishment was clearly linked to Melbye's enrichment. (*Id.* at 12.) Finally, PennyMac argues that it would be unjust to allow Melbye to have "a free house at PennyMac's expense," and whether PennyMac can sue Dennis is irrelevant. (*Id.* at 13–14.)

### ii. Relevant Law and Application

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle*, 228 P.3d at 946 (quoting *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* (quoting *Harmon v. Harmon*, 613 P.2d 1298, 1301 (Ariz. Ct. App. 1980)). "The remedy is flexible and available when equity demands compensation for benefits received, 'even though [the party] has committed no tort and is not contractually obligated to the [other].'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quoting *Murdock–Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985)).

In this case, PennyMac has sufficiently pled that Melbye retained a benefit conferred upon him through the expense of PennyMac's assignor Sunstreet Mortgage. First, PennyMac alleged Melbye was enriched when Sunstreet Mortgage paid his debt to Quicken Loans.

PennyMac has also sufficiently alleged that it was impoverished, and that the impoverishment was linked to Melbye's enrichment. Defendants concede that Sunstreet Mortgage can allege it was impoverished to Melbye's benefit. (Doc. 12 at 9–10.) Because "[a]n assignee steps into the shoes of [its] assignor[,]" PennyMac is entitled to assert the same claims as Sunstreet Mortgage. *Vig v. Nix Project II P'ship*, 212 P.3d 85, 91 (Ariz. Ct. App. 2009) (quoting *K.B. v. State Farm Fire & Cas. Co.*, 941 P.2d 1288, 1292 (Ariz. Ct. App. 1997)); *Highland Vill. Partners, LLC v. Bradbury & Stamm Const. Co.*, 7195 P.3d 184, 187 (Ariz. Ct. App. 2008) ("Assuming the assignment is valid, the assignee acquires the rights previously held by the assignor.").

Furthermore, PennyMac has pled that Melbye's enrichment was unjustified. The absence of justification is a highly fact-specific inquiry. *See Wang Elec.*, 283 P.3d at 49–51. In general, Arizona has adopted a principle that "unjust enrichment should not be used to saddle entities with expenses they chose not to incur." *Id.* at 51. The Arizona Court of Appeals reiterated that,

> [i]n determining whether it would be unjust to allow the retention of benefits without compensation, a court need not find that the defendant intended to compensate the plaintiff for the services rendered or that the plaintiff intended that the defendant be the party to make compensation . . . . What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously . . . .

*Flooring Sys., Inc. v. Radisson Grp., Inc.*, 772 P.2d 578, 581 (quoting *Murdock–Bryant*, 703 P.2d at 1203).

Unrelated to Dennis, Melbye contracted with Quicken Loans to obtain a loan secured by the Property, which he was obligated to pay. At a minimum, PennyMac has

- 11 -

alleged that Melbye intended to incur a mortgage on the Property and that to allow him to retain the benefit of having paid off that mortgage at PennyMac's expense would not be just.

Finally, PennyMac accurately states that it need only plead that it has no other remedy at law against Defendants. *Loiselle*, 228 P.3d at 947. It has done so.

Therefore, taking all the allegations as true, the Court will deny Defendants' Motion to Dismiss as to Count 3.

### C. Count 4: Equitable Mortgage

#### i. Parties' Arguments

Defendants assert that PennyMac fails to plead an equitable mortgage claim because Melbye was not a party to the transaction, and PennyMac received the security it was promised when it obtained the deed of trust from Dennis. (Doc. 12 at 12.)

PennyMac argues that equitable mortgage is appropriate because Dennis intended the deed of trust to transfer a secured interest to Sunstreet Mortgage, and, once her interest was voided, Melbye did not return the money that paid off his Quicken Loans debt. (Doc. 15 at 15.)

#### ii. Relevant Law and Application

Arizona recognizes equitable mortgages as a remedy when the formal requirements of a legal mortgage are not met, but the circumstances and intent of the parties indicate that a mortgage relationship was intended. A.R.S. § 33-437; *Pioneer Annuity Life Ins. Co. by Childers v. Nat'l Equity Life Ins. Co.*, 765 P.2d 550, 558 (Ariz. Ct. App. 1988). The party seeking to establish that an equitable mortgage exists must do so by clear and convincing evidence. *Shelton v. Cunningham*, 508 P.2d 55, 58 (Ariz. 1973) (en banc). Some factors relevant to whether the doctrine of equitable mortgage should apply to formalize the intent of the parties are "the relative sophistication of the parties, and whether one was engaged in the business of loaning money." *Shelton v. Cunningham*, 508 P.2d 55, 58 (Ariz. 1973) (en banc).

"The important consideration is: What did *the parties* intend?" *Merryweather v.*

*Pendleton*, 372 P.2d 335, 340 (Ariz. 1962) (en banc) (emphasis added). In other words, the relevant caselaw considers when equity demands that a court order "that done which ought to be done" as between *the parties* to an invalid mortgage. *See, e.g.*, *Heller v. Levine*, 437 P.2d 983, 986 (Ariz. Ct. App. 1968).

PennyMac has not sufficiently pled a claim for equitable mortgage that would recognize its secured interest in the Property. First, Melbye was never a party to the invalidated transaction between Sunstreet Mortgage and Dennis. Second, the facts here are distinct from an informal conveyance that the parties intended as a mortgage, but which failed to comply with the formal requirements of a mortgage. Perhaps most significantly, Sunstreet Mortgage is presumably relatively sophisticated in the business of loaning money and contracting to obtain valid security interests. To the extent that Melbye has retained the benefit of the loan to which he was not a party, PennyMac may pursue restitution through its unjust enrichment claim. For these reasons, the Court will dismiss Count 4.

### D. Count 5: Ratification

#### i. Parties' Arguments

Defendants also argue that PennyMac fails to state a ratification claim because there is no allegation that Dennis was acting as Melbye's agent when she obtained the loan from Sunstreet Mortgage. (Doc. 12 at 13.) PennyMac asserts it adequately pled ratification because Melbye ratified Dennis's act by retaining the benefits of the Sunstreet Mortgage loan. (Doc. 15 at 16.)

#### ii. Relevant Law and Application

PennyMac has not sufficiently pled a claim to enforce a secured interest in the Property through ratification. Arizona follows the Restatement of Agency. *Fidelity & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 263 P.3d 633, 639 (Ariz. Ct. App. 2011). Under the Restatement (Third) of Agency, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* (quoting Restatement (Third) of Agency § 4.01(1) (2006)). Section 4.03

further states:

> A person may ratify the act of an agent or the act of a person who purported to be an agent but was not. When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is not a basis on which another person may become subject to the legal consequences of the actor's conduct.

Restatement (Third) of Agency § 4.03 cmt. b. Therefore, PennyMac must allege that Dennis acted or claimed to act as an agent to Melbye when she obtained the Sunstreet Mortgage loan and secured it with a deed of trust on the Property. *See Phx. W. Holding Corp. v. Gleeson*, 500 P.2d 320, 326 (Ariz. Ct. App. 1972); *Fuqua Homes, Inc. v. Grosvenor*, 569 P.2d 854, 856 (Ariz. Ct. App. 1977) ("Ratification occurs by acceptance of the benefit from an unauthorized act of one claiming to act as an agent when the affirmance is accompanied by knowledge of the material facts."). PennyMac has not made any allegation that Dennis either acted as Melbye's agent or purported to act as his agent. The Court will, therefore, dismiss Count 5.

**IV. Leave to Amend**

The Court should grant leave to amend "freely when justice so requires." Fed. R. Civ. P. 15(a). The Court evaluates whether to permit amendment by weighing "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). However, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000).

Because the deficiencies identified above as to Counts 1, 2, 4, and 5 cannot be redressed by additional plausible factual allegations, the Court finds that amendment would be futile.

### V. Conclusion

The Court finds that PennyMac has failed to state a claim for equitable subrogation, quiet title, equitable mortgage, and ratification. The Court further finds that PennyMac has sufficiently pled a claim for unjust enrichment.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 12.) Counts 1, 2, 4, and 5 of the Complaint are **DISMISSED**.

Dated this 29th day of September, 2025.

_____
Honorable Angela M. Martinez
United States District Judge